IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MEDSHIFT, LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>VIGOR SERVICES, LLC dba<br>REVIBE MEN'S HEALTH,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No. 3:24-cv-00629<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S ANSWER AND VERIFIED COUNTERCLAIMS

COMES NOW Defendant Vigor Services, LLC d/b/a Revibe Men's Health ("Revibe" or "Defendant") by and through undersigned counsel, pursuant to Rules 8, 12, and 13 of the Federal Rules of Civil Procedure, and hereby files this Answer and Counterclaims to Plaintiff MedShift, LLC's ("MedShift") Verified Complaint ("Complaint"). Without waiving any other defenses asserted herein, Defendant Revibe states as follows:

### As to Parties, Jurisdiction, and Venue

1.　　Revibe does not contest the allegations contained in Paragraph 1 of the Complaint.

2.　　In response to Paragraph 2 of the Complaint, Revibe states that it is organized under the laws of the State of Delaware and has its principal place of business in Honolulu, Hawaii.

3.　　Revibe denies the allegations contained in Paragraph 3 of the Complaint.

4.　　Revibe denies the allegations contained in Paragraph 4 of the Complaint.

5.　　Revibe denies the allegations contained in Paragraph 5 of the Complaint.

### As to MedShift's Alleged Facts

6.      Revibe repeats and incorporates by reference its answers to Paragraphs 1 through 5 of the Complaint for its response to Paragraph 6 of the Complaint.

7.      Revibe denies the allegations contained in Paragraph 7 of the Complaint for lack of sufficient information.

8.      Revibe admits the allegations contained in Paragraph 8 of the Complaint.

9.      Revibe admits the allegations contained in Paragraph 9 of the Complaint.

10.      Revibe admits only that a document titled End User Subscription Agreement is attached to the Complaint as Exhibit A. Revibe denies the remaining allegations contained in Paragraph 10 of the Complaint.

11.      Revibe denies the allegations contained in Paragraph 11 of the Complaint as stated.

12.      Paragraph 12 of the Complaint states no allegations against Revibe, and consequently, no response is required. To the extent an answer is required, Revibe states that Paragraph 12 accurately recites Section 4 of Exhibit A attached to the Complaint.

13.      Revibe denies the allegations contained in Paragraph 13 of the Complaint.

14.      Revibe denies the allegations contained in Paragraph 14 of the Complaint.

15.      In response to Paragraph 15 of the Complaint, Revibe states that it was compliant with the terms of the contract with MedShift before and after May 2023. Specifically, Revibe denies the implication that it breached the contract in or after May 2023.

16.      Revibe denies the allegations contained in Paragraph 16 of the Complaint for lack of sufficient information.

17.      Revibe denies the allegations contained in Paragraph 17 of the Complaint.

18.     Revibe admits that a document purported to be a statement is attached to the Complaint as Exhibit B. However, Revibe denies the allegations contained in Paragraph 18 of the Complaint.

19.     Revibe denies the allegations contained in Paragraph 19 of the Complaint.

20.     Paragraph 20 of the Complaint states no allegations against Revibe, and consequently, no response is required. To the extent an answer is required, Revibe states that Paragraph 20 accurately recites Section 5(a) of Exhibit A attached to the Complaint.

21.     Revibe admits that a document purported to be a notice of default is attached to the Complaint as Exhibit C. However, Revibe denies the allegations contained in Paragraph 21 of the Complaint.

22.     Revibe denies the allegations contained in Paragraph 22 of the Complaint.

23.     In response to Paragraph 23 of the Complaint, Revibe states that MedShift is entitled to no payment from Revibe.

24.     In response to Paragraph 24 of the Complaint, Revibe denies that it refused to return the Devices to MedShift. In fact, Revibe requested that MedShift schedule a date and time to pick up the Devices. However, MedShift failed to do so.

25.     Revibe admits only that it sent a demand letter to MedShift on or around July 31, 2023, raising potential claims against MedShift for its conduct that caused damages to Revibe and inviting MedShift to schedule a time to pick up the Devices. Revibe denies the remaining allegations contained in Paragraph 25 of the Complaint. Revibe further denies that an Exhibit D is attached to the Complaint.

3

26.     Revibe admits only that on or around October 31, 2023, it received a letter from MedShift. Revibe denies the remaining allegations contained in Paragraph 26 of the Complaint. Revibe further denies that an Exhibit E is attached to the Complaint.

27.     In response to Paragraph 27 of the Complaint, Revibe states that MedShift's October 31, 2023 letter was in response to Revibe's July 31, 2023 letter and that no further correspondence was necessary.

28.     In response to Paragraph 28 of the Complaint, Revibe states that MedShift was responsible for the termination of the contract. Revibe denies the remaining allegations contained in Paragraph 28 of the Complaint.

29.     Revibe denies the allegations contained in Paragraph 29 of the Complaint.

30.     Revibe denies the allegations contained in Paragraph 30 of the Complaint.

31.     Revibe denies the allegations contained in Paragraph 31 of the Complaint.

32.     Revibe denies the allegations contained in Paragraph 32 of the Complaint.

33.     Revibe denies the allegations contained in Paragraph 33 of the Complaint.

34.     Revibe denies the allegations contained in Paragraph 34 of the Complaint.

35.     Paragraph 35 of the Complaint states no allegations against Revibe, and consequently, no response is required. To the extent an answer is required, Revibe denies that it owes attorneys' fees to MedShift.

36.     Revibe denies the allegations contained in Paragraph 36 of the Complaint.

37.     Revibe denies that it breached Section 3(b) of the contract between it and MedShift.

### *As to the First Cause of Action – Breach of Contract*

38. Revibe repeats and incorporates by reference its answers to Paragraphs 1 through 37 of the Complaint for its response to Paragraph 38 of the Complaint.

39. Revibe denies the allegations contained in Paragraph 39 of the Complaint.

40. Revibe denies the allegations contained in Paragraph 40 of the Complaint.

41. Revibe denies the allegations contained in Paragraph 41 of the Complaint.

42. Revibe denies the allegations contained in Paragraph 42 of the Complaint.

43. Revibe denies the allegations contained in Paragraph 43 of the Complaint.

44. Revibe denies the allegations contained in Paragraph 44 of the Complaint.

### *As to the Second Cause of Action – Specific Performance*

45. Revibe repeats and incorporates by reference its answers to Paragraphs 1 through 44 of the Complaint for its response to Paragraph 45 of the Complaint.

46. In response to Paragraph 46 of the Complaint, Revibe denies that it breached Section 5(c) of the contract between the parties.

47. Revibe denies the allegations contained in Paragraph 47 of the Complaint.

48. Revibe denies the allegations contained in Paragraph 48 of the Complaint as stated.

49. In response to Paragraph 49 of the Complaint, Revibe states that it invited MedShift to pick the Devices but MedShift failed to do so. Accordingly, Revibe denies the allegations it is responsible for MedShift's failure to recover the Devices.

### *As to the Third Cause of Action – Unjust Enrichment (in the alternative)*

50. Revibe repeats and incorporates by reference its answers to Paragraphs 1 through 49 of the Complaint for its response to Paragraph 50 of the Complaint.

51. Revibe denies the allegations contained in Paragraph 51 of the Complaint.

52.     In response to Paragraph 52 of the Complaint, Revibe states that it paid all required subscription fees under the contract between the parties. Thus, Revibe acknowledges that the Devices were not provided gratuitously.

53.     Revibe denies the allegations contained in Paragraph 53 of the Complaint.

54.     Revibe denies the allegations contained in Paragraph 54 of the Complaint.

55.     Revibe denies the allegations contained in Paragraph 55 of the Complaint.

56.     Revibe denies that MedShift is entitled to the relief requested.

EXCEPT AS EXPRESSLY ADMITTED HEREIN, DEFENDANT DENIES EACH AND EVERY ALLEGATION SET FORTH IN THE COMPLAINT.

## **AFFIRMATIVE DEFENSES**

1.     MedShift is not entitled to relief because the Complaint fails to state a claim upon which relief can be granted.

2.     MedShift is not entitled to relief because of the application of the doctrine of accord and satisfaction.

3.     MedShift is not entitled to relief because of the application of the doctrine of setoff.

4.     MedShift is not entitled to relief because of the application of the doctrine of waiver.

5.     MedShift is not entitled to relief because of the application of the doctrine of estoppel.

6.     MedShift is not entitled to relief because of the application of the doctrine of judicial estoppel.

7.     MedShift is not entitled to relief because Plaintiff failed to mitigate its alleged damages.

6

8.     MedShift is not entitled to relief because of the application of the doctrine of avoidable consequences.

9.     MedShift is not entitled to relief because it failed to join all required or indispensable parties to this litigation under Rule 19 of the Federal Rules of Civil Procedure.

10.     MedShift is not entitled to relief due to payment.

11.     MedShift is not entitled to relief due to the doctrine of release.

12.     MedShift is not entitled to relief because it breached the agreement between it and Revibe.

13.     MedShift is not entitled to relief because it repudiated the agreement between it and Revibe.

14.     MedShift is not entitled to relief because of the doctrine of impossibility.

15.     MedShift is not entitled to relief due to force majeure.

16.     MedShift is not entitled to relief because the action is barred by the applicable limitations period.

17.     MedShift is not entitled to relief because its claims are barred by intervening and/or superseding cause(s).

18.     MedShift is not entitled to relief because of the application of the economic loss doctrine.

19.     MedShift is not entitled to relief due to lack of adequate consideration.

20.     MedShift is not entitled to relief because Revibe's performance under the End User Subscription Agreement was excused.

7

21.     MedShift's unjust enrichment claim fails because of the existence of contract between MedShift and Revibe.

22.     MedShift is not entitled to relief because it has no ownership rights with respect to the Devices covered under the End User Subscription Agreement.

23.     MedShift is not entitled to relief because it failed to cure alleged default for which it was notified pursuant to the End User Subscription Agreement.

24.     MedShift is not entitled to relief because it failed to meet notice requirement(s) under the End User Subscription Agreement.

25.     MedShift is not entitled to relief because there was fraud in the inducement, which vitiates the Agreement.

26.     MedShift is not entitled to relief because of the doctrine of unclean hands.

27.     Defendant reserves the right to invoke additional affirmative defenses as the case proceeds.

WHEREFORE, having fully answered MedShift's Complaint, Revibe respectfully requests that the Complaint be dismissed with prejudice at MedShift's cost, and that the Court award Revibe reasonable attorney's fees and such other relief to which it is entitled.

## VERIFIED COUNTERCLAIMS

Defendant Vigor Services, LLC d/b/a Revibe Men's Health ("Revibe"), for its Verified Counterclaims ("Counterclaims") against Plaintiff MedShift, LLC ("MedShift"), states as follows:

## NATURE OF THE CASE

1.      Revibe brings its Counterclaims to recover damages for MedShift's material breaches of the End User Subscription Agreement (the "Agreement") and fraudulent, unfair, deceptive, and/or neglient conduct to induce Revibe to enter into the Agreement.

## PARTIES

2.      a.      Revibe is a limited liability company organized under the laws of the State of Delaware.

b.      Revibe is a citizen of the State of Texas.

c.      Revibe has its principal place of business located in Hawaii.

d.      Revibe is not a citizen of the State of North Carolina.

3.      Revibe is owned 100% by Intellectual Holdings LLC. The members of Intellectual Holdings LLC include Bernard Brozek, who is a citizen of the State of Texas, and Tom Harman, who is a citizen of Texas.

4.      At all relevant times, MedShift was and still is a limited liability company duly authorized and existing under and by virtue of the laws of the State of North Carolina, with its principal place of business in the State of North Carolina. (*See* Complaint at ¶ 1). Upon information and belief, all members of MedShift are citizens of North Carolina.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1332 because Revibe and MedShift are citizens of different states as shown in Paragraphs 2(a) through 4 of the Counterclaims and the subject matter of the controversy exceeds $75,000.00, exclusive of interest, attorney's fees, and costs.

6.      Venue is proper in this Court.

## GENERAL ALLEGATIONS

7.      On or around January 26, 2022, MedShift and Revibe entered into the Agreement, which is attached to MedShift's Verified Complaint.

8.      Pursuant to Section 1 of the Agreement, MedShift was required to provide to Revibe the services outlined in Addendum A (the "Service") of the Agreement.

9.      Addendum A reads:

*"The Service shall be defined as:*

*1.      Delivery and installation of the EMsculp device which shall be stored and used at Revibe – Tulsa, OK; Tuzany AZ; Seattle, WA; Salt Lake City, UT; and San Antonio, TX (the "Premises") and all associated consumables, applications for EMsculp procedures and associated parts (collectively, the "Product") with supporting documentation, analytics data, software, manufacturer and MedShift provide marketing, and in person training.*

*a.      In person or video training conference clinical training on site within the Premises for Subscriber staff, and team[.]*

*2.      The MedShift Operative Analytics and Cloud Platform consists of features and function processed with MedShift HIPAA compliant frameworks and includes[:]*

a.     *Treatment data derived from the devices conducting the treatment (if enabled by manufacturer);*

b.     *Software configured on Products which communicates with MedShift HIPAA compliant cloud computing infrastructure in real time.*

c.     *Secure information storage with access and control defined in the Business Associate Agreement in section 7 of Agreement.*

3.     *Marketing Services*

a.     *Listing on Manufacturers provider website when compliant with MAP as defined in section 20[.]"*

10.     Section 2 of the Agreement identifies BTL Industries, Inc. ("BTL") as the "Manufacturer" of the EMsculpt devices ("Devices") that are the subject of the Agreement.

11.     Section 20 of the Agreement sets forth several benefits provided by MedShift and BTL to which Revibe was to be entitled:

"***EMSculpt Neo Pricing Policy***.  *It is MedShift's and BTL Industries goal to ensure the investment our customers make in the Emsculpt technology continue to not only retain its value, but grow in value.  To this end, BTL Industries has developed the Emsculpt pricing policy, including a Minimum Advertised Price (MAP).  If Customer participates in Emsculpt NEO MAP minimum advertise pricing of $850/treatment and Emsculpt MAP (minimum advertised pricing of $750/treatment), BTL will offer the following benefits:*

*1. include Subscriber in BTL's provider directory,*

2. 2nd and 3rd year warranty service coverage at no charge (annual value of $15,000) on the Emsculpt NEO device (excluding consumable and replacement parts), and

3. discount from list price for replacement applicators (Emsculpt NEO applicators discounted from $30,000 to $15,000). BTL will provide customer with a written notice of the fist non-compliance with MAP, and a second infraction will result in loss of benefits. Examples of non-compliance to MAP policy include representing over the phone, promoting, or publishing:

1. Treatments at a price below the MAP

2. "Buy one, get one" offers

3. Package offers averaging out to less than MAP

4. Statements such as or similar to "we will beat any price" or "guaranteed lowest pricing anywhere"

5. Participating in social coupons and discount sites[.]

12. However, MedShift and BTL did not provide the benefits outlined in Section 20 of the Agreement to Revibe.

13. Section 12 of the Agreement provides that "Device shall be installed by manufacturer at a date agreed upon by Subscriber following delivery. Authorized users will be trained and certified at MedShift's expense by manufacturer." However, MedShift failed to comply with Section 12 because the required training was not provided to Revibe's staff.

14. Section 15 of the Agreement provides "MedShift and Manufacturer" will provide "training and support" to Revibe: "MedShift and Manufacturer will make initial system operator

and physician training available to [Revibe]." Again, MedShift failed to meet its obligation under Section 15 of the Agreement.

15. Section 17 of the Agreement provides limited warranty for the benefit of Revibe: "MedShift warrants to Subscriber that, subject to the terms and conditions herein, the Products will be free from significant manufacturing defects in materials and workmanship during the Term. During the Term, MedShift will, at MedShift's option, either repair or replace any Product that is not properly functioning."

16. Patricia Scheller ("Scheller"), former CEO of Revibe, guaranteed the Agreement pursuant to Section 22.

17. Section 22 of the Agreement provides that "Guarantor [Scheller] hereby unconditionally guarantees to MedShift the full and prompt payment of all indebtedness * * * of Subscriber due and to become due to MedShift except as otherwise limited below."

18. MedShift was aware that Revibe is a clinic for men prior to entering into the Agreement.

19. In order to induce Revibe to enter into the Agreement, MedShift represented to Revibe that the Devices are attractive to men and can be used for men. However, MedShift's representation was false.

20. The Devices failed to attract men because they were not useful to men.

21. MedShift made the false representation to Revibe for the sole purpose of deceiving and inducing Revibe into executing the Agreement.

22. On several occasions after the effective date of the Agreement, Revibe reached out to BTL and/or MedShift for training and support. However, BTL and/or MedShift failed and/or refused to provide the required training and support.

13

23.     MedShift and/or BTL also failed to provide Revibe the other benefits outlined in the Agreement despite several requests by Revibe.

24.     Revibe paid over $270,000 to MedShift for the Devices — even though Revibe generated minimal revenue from the Devices.

25.     MedShift and/or BTL's deception orchestrated upon Revibe clearly benefited MedShift and BTL.

26.     MedShift knew at the time the parties executed the Agreement that Revibe cannot generate sufficient revenue from the Devices given that Revibe's customer base is mostly male and that the Devices are not useful to men.

27.     But for MedShift's misrepresentation, Revibe would not have entered into the Agreement.

28.     On July 28, 2023, Revibe sent a correspondence to MedShift, requesting that MedShift pick up the Devices from Revibe's various locations where the Devices were installed. However, to date, MedShift failed to pick up the Devices.

29.     On October 31, 2023, in response to Revibe's July 28, 2023 correspondence, MedShift explained through counsel that "MedShift does not engage in direct sales of medical devices. BTL and its representatives marketed the Devices to your clients. Thereafter, BTL connected MedShift and [Revibe] so that MedShift could finance [Revibe's] lease of the Devices."

30.     As a direct result of MedShift breaches, fraudulent and/or negligent conduct, and unfair, deceptive trade practices described herein, Revibe suffered damages in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

14

## COUNT I – BREACH OF CONTRACT

31.     Revibe repeats and incorporates by reference Paragraph 1 through 30 of the Counterclaims for Paragraph 31.

32.     To the extent the Agreement is a valid and enforceable contract, MedShift breached the Agreement because it failed to provide the Service under the Agreement, as outlined in Addendum A of the Agreement.

33.     MedShift also breached the Agreement by failing to meet its obligations under Sections 12, 15, 17, and 20, among other Sections of the Agreement.

34.     Revibe fulfilled all of its obligations under the Agreement.

35.     As a result of MedShift's breach of the Agreement, Revibe suffered damages in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

## COUNT II – Unfair and Deceptive Trade Practices Act (N.C.G.S. § 75-1.1)

36.     Revibe repeats and incorporates by reference Paragraph 1 through 35 of the Counterclaims for Paragraph 36.

37.     MedShift committed unfair and/or deceptive practices as outlined in Paragraphs 18 through 23 of the Counterclaims.

38.     MedShift's unfair and/or deceptive practices were in and/or affected commerce.

39.     MedShift's unfair practices were unethical, unscrupulous and/or injurious to consumers.

40.     MedShift's practices had the capacity or tendency to deceive Revibe, were intended to deceive, and did in fact deceive Revibe.

41.     MedShift's unfair and/or deceptive practices proximately caused injury to Revibe in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

42.     Revibe's damages due to MedShift's unfair and/or deceptive trade practices are independent of, and in addition to, Revibe's damages resulting from MedShift's breach of contract.

## COUNT III – FRAUD IN THE INDUCEMENT

43.     Revibe repeats and incorporates by reference Paragraph 1 through 42 of the Counterclaims for Paragraph 43.

44.     MedShift made false representations to Revibe as outlined in Paragraphs 18 through 21 of the Counterclaims.

45.     MedShift's false representation to Revibe was reasonably calculated to deceive Revibe.

46.     MedShift made the false representation with the intent to deceive Revibe.

47.     The false representation did in fact deceive Revibe.

48.     MedShift made the false representation in the days or weeks prior to the parties' execution of the Agreement.

49.     The false representation by MedShift was material to Revibe's decision to enter into the Agreement.

50.     As a result of MedShift's false representation, Revibe suffered damages in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

51.     Revibe's damages due to MedShift's fraudulent conduct are independent of, and in addition to, Revibe's damages resulting from MedShift's breach of contract.

16

## COUNT IV – NEGLIGENT MISREPRESENTATION

52.     Revibe repeats and incorporates by reference Paragraph 1 through 51 of the Counterclaims for Paragraph 52.

53.     In the course of business, MedShift made false representations to Revibe as outlined in Paragraphs 18 through 21 of the Counterclaims.

54.     MedShift's false representation to Revibe was reasonably calculated to deceive Revibe.

55.     MedShift made the false representation with the intent that Revibe would rely on the representation, and Medshift failed to exercise reasonable care or competence in communicating the false representation.

56.     Revibe did in fact justifiably rely on the false representation to enter into the Agreement.

57.     MedShift made the false representation in the days or weeks prior to the parties' execution of the Agreement.

58.     The false representation by MedShift was material to Revibe's decision to enter into the Agreement.

59.     As a result of MedShift's false representation, Revibe suffered damages in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

## COUNT V - CIVIL CONSPIRACY

60.     Revibe repeats and incorporates by reference Paragraph 1 through 59 of the Counterclaims for Paragraph 60.

17

61. MedShift and BTL agreed and conspired among themselves to engage in unfair and/or deceptive practice as outlined in Count II of the Counterclaims.

62. MedShift and BTL also agreed and conspired among themselves to make false and/or negligent representations to Revibe as outlined in Count III and Count IV of the Counterclaims.

63. The acts outlined under Counts II, III and Count IV of the Counterclaims were unlawful and/or done in an unlawful way.

64. As a result of MedShift's false representations, Revibe suffered damages in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

65. MedShift and BTL agreed and conspired against Revibe pursuant to a common scheme to generate revenue from the lease of the Devices to Revibe.

66. MedShift's October 31, 2023 correspondence further confirmed the existence of a common scheme between MedShift and BTL.

WHEREFORE, Revibe hereby requests that judgment be entered in its favor and against MedShift as follows:

(1) **As to Count I:** Damages to compensate Revibe for MedShift's breach of contract.

(2) **As to Count II:** A judgment in favor of Revibe and against MedShift for unfair and/or deceptive practices in an amount to be determined at trial, and an award of treble damages, and attorney's fees.

(3) **As to Count III**: A judgment in favor of Revibe and against MedShift for fraud in the inducement in an amount to be determined at trial, and an award of punitive damages, and attorney fees.

.

18

(4)    **As to Count IV**: A judgment in favor of Revibe and against MedShift for negligent misrepresentation in an amount to be determined at trial, and attorney fees.

(5)    **As to Count V:** a judgment in favor of Revibe and against MedShift for civil conspiracy in an amount to be determined at trial, and an award of punitive damages, and attorney fees.

(6)    **As to all Counts:**  Any such other relief, legal or equitable, that this Court deems suitable and proper.

Dated this the 10th day of July, 2024.

Respectfully submitted,

_/s/ Virginia M. Wooten_
Virginia M. Wooten, NC #48180
Meredith F. Hamilton, NC # 50703
_Attorneys for Defendant_
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704-342-2588
Facsimile:  704-342-4379
Email:  virginia.wooten@ogletree.com
          meredith.hamilton@ogletree.com

19

## CERTIFICATE OF SERVICE

I, **Virginia M. Wooten**, hereby certify that I have this day electronically filed and served the foregoing **ANSWER AND VERIFIED COUNTERCLAIMS** with the Clerk of Court using the CM/ECF system which will give notice of the same to the following:

Trey Lindley, Esq.
Lord & Lindley, PLLC
326 West 10th Street
Charlotte, NC 29202
tlindley@lordlindley.com
*Attorney for Plaintiff*


Dated this the 10th day of July, 2024.

/s/ Virginia M. Wooten
Virginia M. Wooten, NC #48180
*Attorney for Defendant*
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone: 704-342-2588
Facsimile: 704-342-4379
Email: virginia.wooten@ogletree.com

**STATE OF TEXAS** )

**COUNTY OF** Williamson )  SS:  **VERIFICATION**

    I, Bernard Brozek, being first duly sworn, depose and say that I am the Chief Executive Officer of Revibe, that I am over 21 years of age, that I am competent, that I am familiar with and have personal and/or positional knowledge of the facts referred to in the Verified Counterclaims, that I have read the Verified Counterclaims, and that said facts and allegations are true to the best of my knowledge, information, and belief.

                                                     _____
                                                     Bernard Brozek

SWORN TO BEFORE ME this 10th day of July, 2024.

PARESH PATEL
Notary Public, State of Texas
Comm. Expires 07-01-2025
Notary ID 125350047

                                        Notary Public

20