IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MEDSHIFT, LLC, <br><br> Plaintiff, <br><br> v. <br><br> VIGOR SERVICES, LLC dba REVIBE MEN'S HEALTH, <br><br> Defendant. | Civil Action No. 3:24-cv-00629 |

## DEFENDANT VIGOR SERVICES, LLC'S AMENDED COUNTERCLAIMS

For its Amended Counterclaims against MedShift, LLC ("MedShift"), Defendant Vigor Services, LLC d/b/a Revibe Men's Health ("Revibe") states as follows:

## NATURE OF THE CASE

1. Revibe brings its Amended Counterclaims to recover damages for MedShift's material breaches of the End User Subscription Agreement (the "Agreement") and fraudulent, unfair, deceptive, and/or neglient conduct. The Agreement relates to the lease of EMsculpt devices ("Devices").

## PARTIES

2.    a.    Revibe is a limited liability company organized under the laws of the State of Delaware.

      b.    Revibe is a citizen of the State of Texas.

      c.    Revibe has its principal place of business located in Hawaii.

      d.    Revibe is not a citizen of the State of North Carolina.

3. Revibe is owned 100% by Intellectual Holdings LLC. The members of Intellectual Holdings LLC include Bernard Brozek, who is a citizen of the State of Texas, and Tom Harman, who is a citizen of Texas.

4. At all relevant times, MedShift was and still is a limited liability company duly authorized and existing under and by virtue of the laws of the State of North Carolina, with its principal place of business in the State of North Carolina. (*See* Complaint at ¶ 1). Upon information and belief, all members of MedShift are citizens of North Carolina.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the Counterclaims pursuant to 28 U.S.C. § 1332 because Revibe and MedShift are citizens of different states as shown in Paragraphs 2(a) through 4 of the Counterclaims and the subject matter of the controversy exceeds $75,000.00, exclusive of interest, attorney's fees, and costs.

6. Venue is proper in this Court.

## GENERAL ALLEGATIONS

7. On or around January 26, 2022, MedShift and Revibe entered into the Agreement, which is attached to MedShift's Verified Complaint.

8. Pursuant to Section 1 of the Agreement, MedShift was required to provide to Revibe the services outlined in Addendum A (the "Service") of the Agreement.

9. Addendum A reads:

"*The Service shall be defined as:*

*1. Delivery and installation of the EMsculp device which shall be stored and used at Revibe – Tulsa, OK; Tuzany [Tucson] AZ; Seattle, WA; Salt Lake City, UT; and San Antonio, TX (the "Premises") and all associated consumables, applications for EMsculp*

*procedures and associated parts (collectively, the "Product") with supporting documentation, analytics data, software, manufacturer and MedShift provide marketing, and in person training.*

    *a.  In person or video training conference clinical training on site within the Premises for Subscriber staff, and team[.]*

    *2.  The MedShift Operative Analytics and Cloud Platform consists of features and function processed with MedShift HIPAA compliant frameworks and includes[:]*

    *a.  Treatment data derived from the devices conducting the treatment (if enabled by manufacturer);*

    *b.  Software configured on Products which communicates with MedShift HIPAA compliant cloud computing infrastructure in real time.*

    *c.  Secure information storage with access and control defined in the Business Associate Agreement in section 7 of Agreement.*

    *3.  Marketing Services*

    *a.  Listing on Manufacturers provider website when compliant with MAP as defined in section 20[.]"*

  10.  Section 2 of the Agreement identifies BTL Industries, Inc. ("BTL") as the "Manufacturer" of the Devices that are the subject of the Agreement.

  11.  Section 20 of the Agreement sets forth several benefits provided by MedShift and BTL to which Revibe was to be entitled:

> "**EMSculpt Neo Pricing Policy**. *It is MedShift's and BTL Industries goal to ensure the investment our customers make in the Emsculpt technology continue to not only retain its value, but grow in value. To this end, BTL Industries has developed the Emsculpt pricing policy, including a Minimum Advertised Price (MAP). If*

3

> *Customer participates in Emsculpt NEO MAP minimum advertise pricing of $850/treatment and Emsculpt MAP (minimum advertised pricing of $750/treatment), BTL will offer the following benefits:*
>
> 1. *include Subscriber in BTL's provider directory,*
>
> 2. *2nd and 3rd year warranty service coverage at no charge (annual value of $15,000) on the Emsculpt NEO device (excluding consumable and replacement parts), and*
>
> 3. *discount from list price for replacement applicators (Emsculpt NEO applicators discounted from $30,000 to $15,000). BTL will provide customer with a written notice of the fist non-compliance with MAP, and a second infraction will result in loss of benefits. Examples of non-compliance to MAP policy include representing over the phone, promoting, or publishing:*
>
> 1. *Treatments at a price below the MAP*
>
> 2. *"Buy one, get one" offers*
>
> 3. *Package offers averaging out to less than MAP*
>
> 4. *Statements such as or similar to "we will beat any price" or "guaranteed lowest pricing anywhere"*
>
> 5. *Participating in social coupons and discount sites[.]*

12. However, MedShift and BTL did not provide the benefits outlined in Section 20 of the Agreement to Revibe.

13. Section 12 of the Agreement provides that "Device shall be installed by manufacturer at a date agreed upon by Subscriber following delivery. Authorized users will be

trained and certified at MedShift's expense by manufacturer." However, MedShift failed to comply with Section 12 because the required training was not provided to Revibe's staff.

14. Section 15 of the Agreement provides "MedShift and Manufacturer" will provide "training and support" to Revibe: "MedShift and Manufacturer will make initial system operator and physician training available to [Revibe]." Again, MedShift failed to meet its obligation under Section 15 of the Agreement.

15. Section 17 of the Agreement provides limited warranty for the benefit of Revibe: "MedShift warrants to Subscriber that, subject to the terms and conditions herein, the Products will be free from significant manufacturing defects in materials and workmanship during the Term. During the Term, MedShift will, at MedShift's option, either repair or replace any Product that is not properly functioning."

16. Patricia Scheller ("Scheller"), former CEO of Revibe, guaranteed the Agreement pursuant to Section 22.

17. Section 22 of the Agreement provides that "Guarantor [Scheller] hereby unconditionally guarantees to MedShift the full and prompt payment of all indebtedness * * * of Subscriber due and to become due to MedShift except as otherwise limited below."

18. MedShift was aware that Revibe is a clinic for men prior to entering into the Agreement.

19. To induce Revibe to enter into the Agreement, employees of MedShift, including Joe Gasque, represented to Bernard Brozek and Revibe in January 2022 that the Devices were attractive to men and could be used for men. However, MedShift's representations were false.

20. The Devices failed to attract men because they were not useful to men.

5

21. MedShift made the false representations to Revibe for the sole purpose of deceiving and inducing Revibe into executing the Agreement.

22. On several occasions after the effective date of the Agreement, Revibe reached out to BTL and/or MedShift for training and support. However, BTL and/or MedShift failed and/or refused to provide the required training and support.

23. MedShift and/or BTL also failed to provide Revibe the other benefits outlined in the Agreement despite several requests by Revibe.

24. Bernard Brozek became Chief Executive Officer of Revibe in August 2022. From that time, Revibe repeatedly expressed to MedShift and BTL its complete disappointment with the Devices and BTL's services and expressed its intent to cancel the Agreement. Also, Revibe expressed its intent not to order any additional Device.

25. To convince Revibe not to terminate the Agreement, MedShift either individually or in conspiracy with BTL, made several misrepresentations to Revibe.

26. For example, Scott Mills, President of Sales at BTL, sent an e-mail to Revibe on March 14, 2023, stating: "Great, our BTL team is there to support, assist and offer suggestions that have been successful around the country in other clinics. BTL and MedShift would love to see Revibe turn things around at each of these six locations!" This was a false representation by BTL. MedShift knew BTL's representation was false.

27. In March 2023, Mills and Joe Gasque ("Gasque"), Chief Executive Officer of MedShift, again repeatedly represented to Bernard Brozek that the Devices were attractive to men and could be used for men. Again, this representation was false.

28. In March 2023, Gasque and Mills further represented to Brozek that Revibe would be "printing money" with the Devices, meaning that the Devices would increase Revibe's revenue and profitability. Again, this representation was false.

29. Previously, in January 2023, Gasque and Mills represented to Revibe that MedShift and BTL would implement a strategy to help Revibe market the Equipment to MedShift's customers. This was another false representation.

30. Revibe paid over $270,000 to MedShift for the Devices — even though Revibe generated minimal revenue from the Devices.

31. MedShift and/or BTL's deception orchestrated upon Revibe clearly benefited MedShift and BTL.

32. MedShift knew at the time the parties executed the Agreement that Revibe cannot generate sufficient revenue from the Devices given that Revibe's customer base is mostly male and that the Devices are not useful to men.

33. But for MedShift's misrepresentation, Revibe would not have entered into the Agreement. And but for MedShift's representations, Revibe would have cancelled the Agreement.

34. On July 28, 2023, Revibe sent a correspondence to MedShift, requesting that MedShift pick up the Devices from Revibe's various locations where the Devices were installed. However, to date, MedShift failed to pick up the Devices.

35. On October 31, 2023, in response to Revibe's July 28, 2023 correspondence, MedShift explained through counsel that "MedShift does not engage in direct sales of medical devices. BTL and its representatives marketed the Devices to your clients. Thereafter, BTL connected MedShift and [Revibe] so that MedShift could finance [Revibe's] lease of the Devices."

36. As a direct result of MedShift breaches, fraudulent and/or negligent conduct, and unfair, deceptive trade practices described herein, Revibe suffered damages in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

## COUNT I – BREACH OF CONTRACT

37. Revibe repeats and incorporates by reference Paragraph 1 through 36 of the Amended Counterclaims for Paragraph 37.

38. To the extent the Agreement is a valid and enforceable contract, MedShift breached the Agreement because it failed to provide the Service under the Agreement, as outlined in Addendum A of the Agreement.

39. MedShift also breached the Agreement by failing to meet its obligations under Sections 12, 15, 17, and 20, among other Sections of the Agreement.

40. Revibe fulfilled all of its obligations under the Agreement.

41. As a result of MedShift's breach of the Agreement, Revibe suffered damages in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

## COUNT II – Unfair and Deceptive Trade Practices Act (N.C.G.S. § 75-1.1)

42. Revibe repeats and incorporates by reference Paragraph 1 through 41 of the Amended Counterclaims for Paragraph 42.

43. MedShift committed unfair and/or deceptive practices as outlined in Paragraphs 18 through 29 of the Amended Counterclaims.

44. MedShift's unfair and/or deceptive practices were in and/or affected commerce.

45. MedShift's unfair practices were unethical, unscrupulous and/or injurious to consumers.

46. MedShift's practices had the capacity or tendency to deceive Revibe, were intended to deceive, and did in fact deceive Revibe.

47. MedShift's unfair and/or deceptive practices proximately caused injury to Revibe in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

48. Revibe's damages due to MedShift's unfair and/or deceptive trade practices are independent of, and in addition to, Revibe's damages resulting from MedShift's breach of contract.

## COUNT III – FRAUD IN THE INDUCEMENT

49. Revibe repeats and incorporates by reference Paragraph 1 through 48 of the Amended Counterclaims for Paragraph 49.

50. MedShift made false representations to Revibe as outlined in Paragraphs 18 through 29 of the Amended Counterclaims.

51. MedShift's false representations to Revibe were reasonably calculated to deceive Revibe.

52. MedShift made the false representations with the intent to deceive Revibe.

53. MedShift's false representations did in fact deceive Revibe.

54. MedShift's false representations were material to Revibe's decision to enter into the Agreement.

55. MedShift's false misrepresentations to Revibe after the Agreement was entered into were material to convince Revibe not to cancel the Agreement.

56. As a result of MedShift's false representations, Revibe suffered damages in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

57. Revibe's damages due to MedShift's fraudulent conduct are independent of, and in addition to, Revibe's damages resulting from MedShift's breach of contract.

### COUNT IV – NEGLIGENT MISREPRESENTATION

58. Revibe repeats and incorporates by reference Paragraph 1 through 57 of the Amended Counterclaims for Paragraph 58.

59. In the course of business, MedShift made false representations to Revibe as outlined in Paragraphs 18 through 29 of the Amened Counterclaims.

60. MedShift's false representations to Revibe were reasonably calculated to deceive Revibe.

61. MedShift made the false representations with the intent that Revibe would rely on the representations, and Medshift failed to exercise reasonable care or competence in communicating the false representations.

62. Revibe did in fact justifiably rely on the false representations to enter into the Agreement.

63. MedShift's false representations were material to Revibe's decision to enter into the Agreement.

64. MedShift's false misrepresentations to Revibe after the Agreement was entered into were material to Revibe's decision not to cancel the Agreement.

65. As a result of MedShift's false representation, Revibe suffered damages in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

## COUNT V - CIVIL CONSPIRACY

66. Revibe repeats and incorporates by reference Paragraph 1 through 65 of the Amended Counterclaims for Paragraph 66.

67. MedShift and BTL agreed and conspired among themselves to engage in unfair and/or deceptive practice as outlined in Count II of the Amended Counterclaims.

68. MedShift and BTL also agreed and conspired among themselves to make false and/or negligent representations to Revibe as outlined in Count III and Count IV of the Amended Counterclaims.

69. The acts outlined under Counts II, III and Count IV of the Amended Counterclaims were unlawful and/or done in an unlawful way.

70. MedShift and BTL agreed and conspired against Revibe pursuant to a common scheme to generate revenue from the lease of the Devices to Revibe.

71. As a result of the conspiracy, Revibe suffered damages in excess of $75,000.00, exclusive of interest, attorney's fees, and costs, with the exact amount of Revibe's damages to be proven at trial.

72. MedShift's October 31, 2023 correspondence further confirmed the existence of a common scheme between MedShift and BTL.

WHEREFORE, Revibe hereby requests that judgment be entered in its favor and against MedShift as follows:

**(1)** **As to Count I:** Damages to compensate Revibe for MedShift's breach of contract.

**(2)     As to Count II:**  A judgment in favor of Revibe and against MedShift for unfair and/or deceptive practices in an amount to be determined at trial, and an award of treble damages, and attorney's fees.

**(3)     As to Count III**: A judgment in favor of Revibe and against MedShift for fraud in the inducement in an amount to be determined at trial, and an award of punitive damages, and attorney fees.

**(4)     As to Count IV**: A judgment in favor of Revibe and against MedShift for negligent misrepresentation in an amount to be determined at trial, and attorney fees.

**(5)     As to Count V:** a judgment in favor of Revibe and against MedShift for civil conspiracy in an amount to be determined at trial, and an award of punitive damages, and attorney fees.

**(6)     As to all Counts:**  Any such other relief, legal or equitable, that this Court deems suitable and proper.

Dated this the 1st day of November, 2024.

Respectfully submitted,

*/s/ Virginia M. Wooten*
Virginia M. Wooten, NC #48180
Meredith F. Hamilton, NC # 50703
*Attorneys for Defendant*
OGLETREE, DEAKINS, NASH,
 SMOAK & STEWART, P.C.
201 South College Street, Suite 2300
Charlotte, NC  28244
Telephone:  704-342-2588
Facsimile:  704-342-4379
Email:  virginia.wooten@ogletree.com
         meredith.hamilton@ogletree.com

<div style="text-align: right">
Komlavi Atsou, OH #0084235  
Attorney for Defendant  
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.  
Key Tower  
127 Public Square, Suite 4100  
Cleveland, OH 44114  
Office: 216-241-6100  
Fax: 216-357-4733  
Email: komlavi.atsou@ogletree.com
</div>

## CERTIFICATE OF SERVICE

I, **Virginia M. Wooten**, hereby certify that I have this day electronically filed and served the foregoing **AMENDED COUNTERCLAIMS** with the Clerk of Court using the CM/ECF system which will give notice of the same to the following:

Trey Lindley, Esq.  
Lord & Lindley, PLLC  
326 West 10th Street  
Charlotte, NC 29202  
tlindley@lordlindley.com  
*Attorney for Plaintiff*

Dated this 1st day of November, 2024.

<div style="margin-left: 50%">
*/s/ Virginia M. Wooten*  
Virginia M. Wooten, NC #48180  
*Attorney for Defendant*  
OGLETREE, DEAKINS, NASH,  
 SMOAK & STEWART, P.C.  
201 South College Street, Suite 2300  
Charlotte, NC 28244  
Telephone: 704-342-2588  
Facsimile: 704-342-4379  
Email: virginia.wooten@ogletree.com
</div>