IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| MEDSHIFT, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) |
| VIGOR SERVICES, LLC d/b/a REVIBE MEN'S HEALTH, | ) Civil Action No. 3:24-cv-00629 |
| Defendant/Third-Party Plaintiff, | ) |
| vs. | ) |
| BTL INDUSTRIES, INC., | ) |
| Third-Party Defendant. | ) |

## MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT BTL INDUSTRIES, INC.'S MOTION TO DISMISS

This Court should grant BTL's motion to dismiss of lack of personal jurisdiction. BTL is incorporated in Delaware and has its principal place of business in Massachusetts, and all the events alleged in the First Amended Third-Party Complaint took place entirely outside North Carolina. This Court cannot exercise jurisdiction over BTL within the bounds of due process.

Even if personal jurisdiction were to exist against BTL, Revibe has failed to state claims for fraud, negligent misrepresentation, unfair and deceptive trade practices, and civil conspiracy. Those claims are based on events that occurred entirely outside North Carolina, have not been pled with sufficient particularity, and are based on statements that amount to future promises and puffery. The First Amended Third-Party Complaint should therefore be dismissed.

BACKGROUND

BTL and its affiliates pioneered the development of non-invasive aesthetic body-contouring devices that are FDA-cleared to help firm, tone, and sculpt the body. (Chmel Decl. ¶ 2) BTL is a privately held corporation organized and existing under the laws of the State Delaware, with its principal place of business located at Marlborough, Massachusetts." (D.E. 17, ¶ 4; Chmel Decl. ¶ 3) Among its many industry-leading devices is the Emsculpt Neo body-contouring device, a number of which Third-Party Plaintiff Revibe alleges it leased from Plaintiff Medshift, LLC. (Chmel Decl. ¶ 2; D.E. 17, ¶ 9)

Revibe is a Delaware Corporation with a principal place of business in Hawaii. (D.E. 17, ¶ 2) Revibe "operates men's clinics in several states, including Oklahoma, Arizona, Washington, Utah, Texas, and California." (D.E. 17, ¶ 8) Revibe does not allege it has any operations in the State of North Carolina.

According to its First Amended Third-Party Complaint, in a January 2022 agreement, Revibe leased Emsculpt Neo equipment from Plaintiff Medshift for use in six clinics in Oklahoma, Washington, Arizona, Utah, Texas, and California. (D.E. 17, ¶ 9) Revibe and Medshift's lease agreement lists Oklahoma, Arizona, Washington, Utah, and Texas as locations where devices under the agreement will be stored and used. (D.E. 17, ¶ 11) BTL manufactured the devices, which were allegedly installed in Revibe's clinics in February and June 2022, but it is not alleged to have been a party to the lease agreement. (D.E. 17, ¶ 12, 15) BTL allegedly conducted "initial trainings of Revibe's employees at some of Revibe's men's clinics between February and March 2022." (D.E. 17, ¶ 16) There is no allegation that any of this training took place in North Carolina.

The First Amended Third-Party Complaint further alleges that BTL made several misrepresentations to Revibe, including that "our BTL team is there to support, assist, and offer suggestions that have been successful around the country in other clinics," that "BTL and Medshift would love to see Revibe turn things around at each of these six locations," that "the Equipment was attractive to men and could be used for men," that "Revibe would be 'printing money' with the Equipment," and that "BTL would implement a strategy a strategy to help Revibe market the Equipment to MedShift's customers." (D.E. 17, ¶¶ 22-25) These representations were allegedly made by BTL's representatives in January and March 2023, at least one year *after* the Revibe and Medshift agreement underpinning this lawsuit. (D.E. 17, ¶¶ 22-24) The Third-Party Complaint alleges these representations were done "[i]n order to convince Revibe not to terminate the Agreement [with MedShift]." (D.E. 17, ¶ 21) There is no allegation that BTL would have been harmed by a termination of the Agreement, nor is there an allegation that it would have benefitted from the continuation of the Agreement.

On November 4, 2024, Revibe initiated its third-party action against BTL, alleging four causes of action. BTL has now moved to dismiss for lack of personal jurisdiction under Fed. R. Civ. Proc. 12(b)(2) and for failure to state a claim under Fed. R. Civ. Proc. 12(b)(6).

ARGUMENT

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland v. Carefirst Pregnancy Ctrs.*, 334 F.3d 390, 396 (4th Cir. 2003).

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

3

defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In doing so, courts must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (internal citation omitted). A court does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

I. BTL IS NOT SUBJECT TO PERSONAL JURISDICTION IN NORTH CAROLINA.

North Carolina's long-arm statute, N.C. Gen. Stat. § 1-75.4, permits courts to exercise "personal jurisdiction over a defendant to the outer limits allowable under federal due process." *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). Here, therefore, BTL is only amendable to jurisdiction in North Carolina if to do so would be consistent with due process. Due process allows for courts to exercise jurisdiction over a defendant in one of two ways. First, general jurisdiction exists when a defendant has continuous and systematic contacts with the forum state regardless of where the conduct occurs. *See Wall Recycling, LLC v. 3TEK Glob., LLC*, 497 F. Supp. 3d 30, 37 (M.D.N.C. 2020). Second, specific jurisdiction exists when the underlying conduct has a connection with the forum state. *Id.*

A. BTL is not subject to general jurisdiction in North Carolina.

The Supreme Court has held that "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradig[m]…bases for general jurisdiction." *Daimler AG v. Bauman*, 571 US 117, 137 (2014). That is, absent the exceptional case, a corporation is "at home" only where it is incorporated or where it has its principal place of business. *Id.* at 137.

4

Subjecting BTL to general jurisdiction in North Carolina would run afoul of established law and violate BTL's due process rights. BTL is a Delaware corporation headquartered in Marlborough, Massachusetts. (D.E. 17, ¶ 3; Chmel Decl. ¶ 3)  It therefore does not meet either paradigmatic basis for general jurisdiction in North Carolina. *See Daimler AG*, 571 US at 137.

This is not an "exceptional case" such that BTL is "essentially at home" in North Carolina.  The First Amended Third-Party Complaint does not allege any "exceptional circumstances" that would support general jurisdiction. In fact, it does not even make the allegation that BTL is subject to personal jurisdiction in North Carolina. The entirety of the First Amended Third-Party Complaint's "jurisdiction" allegations is that this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, which is irrelevant to the existence or non-existence of personal jurisdiction. (D.E. 17, ¶ 5)  The Court should not reach to find reasons to treat this as an exceptional case where Revibe has alleged none.

Even if the Court examines the facts more closely, BTL is not "at home" in North Carolina. BTL has no executive officers, no research facilities, no significant employee base, no real property, and no manufacturing in this State. (Chmel Decl. ¶ 3) BTL's contacts with North Carolina are limited to nine employees, out of over 280, none of whom work from a BTL office located in North Carolina. (Chmel Decl. ¶ 7) BTL has similar "contacts" with nearly every U.S. state. To hold BTL amendable to general jurisdiction in North Carolina on the basis of nine salespeople would render BTL essentially at home everywhere in the United States, which would be in direct conflict with the Supreme Court's recognition that "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler* at 139, n. 20.

*Fidrych v. Marriott International, Inc.* is instructive here. 952 F.3d 124 (4th Cir. 2020). In that case, the Fourth Circuit was asked whether Marriott, the large hotel chain, was subject to

general jurisdiction in South Carolina. *Id.* Following the decision in *Daimler*, the Court had "no difficulty concluding that Marriott's contacts with South Carolina are insufficient to make it 'at home' in South Carolina." *Id.* at 134. This was the case even though Marriott had 63 franchisees and 27 self-managed hotels in the state. *Id.* The court recognized that while these were continuous and systematic contacts, there was nothing to distinguish them from Marriott's contacts with any other state. *Id.* That is, holding Marriott's contacts sufficient for general jurisdiction would render them "at home" in every state, running afoul of the Supreme Court's *Daimler* decision. *Id.*

The same is true here. Outside of Delaware and Massachusetts, where BTL is incorporated and has its principal place of business, BTL's contacts with North Carolina are the same as its contacts in every other state. (Chmel Decl. ¶ 7) Nothing about BTL's North Carolina operations, relative to BTL's overall operations, is special or exceptional.

If Marriott's contacts with South Carolina are insufficient to render them "at home" in South Carolina, BTL's far less extensive contacts with North Carolina are also insufficient. BTL is not "at home" in North Carolina, and this Court therefore lacks general personal jurisdiction over it.

B.      BTL is not subject to specific jurisdiction in North Carolina.

"For a court to exercise specific jurisdiction over a claim there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" *Bristol-Myers Squibb v. Superior Court*, 582 U.S. 255, 256 (2017) (citing *Goodyear Dunlop Tires Operations, SA v. Brown*, 564 U.S. 915, 919 (2011)). "When no such connection exists, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Id.*

6

The exercise of specific jurisdiction is therefore only met here if there is a nexus or relationship between BTL, North Carolina, and the allegations in the complaint. *See Consulting Eng'rs Corp. v. Geometric Ltd.,* 561 F.3d 273, 278-79 (4th Cir. 2009). That is, BTL's conduct that forms the basis of the allegations in the First Amended Third-Party Complaint must have a connection to North Carolina.

Revibe fails to articulate any nexus or relationship between the asserted claims and North Carolina. Revibe's allegations concern conduct wholly outside the state of North Carolina. For example, the First Amended Third-Party Complaint alleges Revibe operates in six states, none of which is North Carolina. (D.E. 17, ¶¶ 8-9) Revibe further alleges that BTL installed devices and conducted training at Revibe's clinics, none of which are in North Carolina. (D.E. 17, ¶¶ 14-16) There is no allegation that a single communication between BTL and Revibe was sent or received in North Carolina. The events giving rise to the First Amended Third-Party Complaint have no connection to North Carolina at all. This Court should therefore reject any invitation by Revibe to exercise specific jurisdiction over BTL.

Lacking both general and specific personal jurisdiction over BTL, the Court must dismiss Revibe's First Amended Third-Party Complaint.

II. REVIBE HAS FAILED TO STATE A CLAIM AGAINST BTL.

Should the Court assert personal jurisdiction over BTL, it should nevertheless dismiss Revibe's First Amended Third-Party Complaint because it fails to state a claim against BTL upon which relief may be granted.

A. Revibe has not stated a claim for Unfair and Deceptive Trade Practices.

To establish a claim under N.C. Gen. Stat. § 75-1.1, a plaintiff must show "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused

7

injury to plaintiffs." *Gray v. N. Carolina Ins. Underwriting Ass'n*, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000). However, "limiting the scope of the act to cases involving a substantial effect on a plaintiff's in-state business operation is consistent with, and perhaps required by, the commerce clause." *The `In' Porters, S.A. v. Hanes Printables, Inc.*, 663 F. Supp. 494, 502 (M.D.N.C. 1987).

Here Revibe's claim can only stand if their North Carolina operations were sufficiently affected by BTL's actions. Revibe is not a North Carolina entity, and it does not allege that it operates in North Carolina. (D.E. 17, ¶¶ 8-9) No BTL conduct could possibly affect Revibe's North Carolina operations when Revibe has no North Carolina operations. Count I of the First Amended Third-Party Complaint is therefore subject to dismissal.

B.      <u>Revibe has not stated claims for fraud in the inducement or negligent misrepresentation.</u>

Revibe's claims for fraud in the inducement and negligent misrepresentation fail for two independent reasons. First, the First Amended Third-Party Complaint lacks the required specificity for pleading fraud and negligent misrepresentation claims. Second, none of the alleged conduct, even if it were adequately pled, can support Revibe's claims.

In North Carolina, "[t]he essential elements of fraud [in the inducement] are: (1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Tradewinds Airlines, Inc. v. C-S Aviation Servs.*, 222 N.C. App. 834, 840, 733 S.E.2d 162, 168 (2012). The Federal Rules of Civil Procedure require that a party "state with particularity the circumstances constituting fraud." Fed. R. Civ. Proc. 9(b). In diversity cases, federal courts apply the heightened pleading standards for fraud contained in the Federal Rules of Civil Procedure. *Topshelf Mgmt. v. Campbell-Ewald Co*., 117 F. Supp. 3d 722, 726

(M.D.N.C. 2015).  The same heightened pleading standard extends to claims for negligent misrepresentation.  *Id.* at 727-28.  To satisfy Rule 9(b), a party must state with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Three of the "false misrepresentations" alleged in the First Amended Third-Party Complaint fail to meet this standard. Revibe claims that in March 2023, Scott Mills of BTL and MedShift's CEO "repeatedly represented… that the Equipment was attractive to men and could be used for men." (D.E. 17, ¶ 23) Putting aside whether this is even false, the First Amended Third-Party Complaint fails to indicate on what date in March 2023 this was allegedly stated, in what medium (email, text, phone call), what was the context, and, most important, what exactly was said. The exact statement matters. How the "representation" was phrased matters. The context surrounding the alleged representation matters, and none of this is alleged.

Similarly, Revibe alleges BTL made the false representation that "Revibe would be 'printing money' with the Equipment. (D.E. 17, ¶ 25)  Outside of saying it was in March 2023, there is no indication which of the two listed people–employees of two different companies, no less–made this statement, in what context, and when in March this was said. Moreover, this is not a material fact. But even ignoring that, again, context matters, what precisely was said matters, when it was said matters. This is simply too vague to meet the heightened standards required under Rule 9(b).

Revibe's final alleged false misrepresentation is that in January 2023, BTL and MedShift "represented to Revibe that MedShift and BTL would implement a strategy to help Revibe market the Equipment to MedShift's customers." (D.E. 17, ¶ 25)  Revibe offers no context, no

indication which of the two people from two different companies made the statement, no allegation as to what the statement actually was, when it was made, or what the material fact was. This is insufficient under Rule 9(b).

Even if they were sufficiently particular, Revibe's claims for fraud and negligent misrepresentation nevertheless fail. "A claim for fraud may be based on an affirmative misrepresentation of a material fact, or a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." *Hardin v. KCS Int'l, Inc.*, 199 N.C. App. 687, 696, 682 S.E.2d 726, 733 (2009). "[T]he mere expression of an opinion or belief, or more precisely a representation which is nothing more than the statement of an opinion, cannot constitute fraud." *Myrtle Apartments, Inc. v. Lumbermen's Mut. Cas. Co.*, 258 N.C. 49, 52, 127 S.E.2d 759, 761 (1962). "Statements that consist of nothing more than indefinite statement of corporate optimism, also known as 'puffery,' are immaterial as a matter of law." *Hillson Partners Ltd. P'ship v. Adage, Inc.*, 42 F.3d 204, 211 (4th Cir. 1994).

The statements on which Revibe wishes to proceed are not representations of material fact. The allegation that BTL "would love to see Revibe turn things around" is a statement of opinion. The statement that Revibe would be "printing money" is puffery. (D.E. 17, ¶¶ 22, 24)

Moreover, of the four alleged BTL false misrepresentations, two are at best future promises. "As a general rule, a mere promissory misrepresentation will not support an action for fraud." *Braun v. Glade Valley Sch., Inc.*, 77 N.C. App. 83, 87, 334 S.E.2d 404, 407 (1985). For example, BTL's statement that it will "support, assist and offer suggestions that have been successful around the country in other clinics" is at best a future promise. (D.E. 17, ¶ 22) The similarly alleged misrepresentation that BTL would implement a strategy to help Revibe market is also a future promise. (D.E. 17, ¶ 25) Because Revibe has not, and cannot, allege that BTL did

not intend to fulfill these statements, they cannot form the basis for a fraud or negligent misrepresentation claim.

C.  Revibe has not stated a claim for civil conspiracy.

Revibe's fourth cause of action is a claim for a civil conspiracy by BTL and MedShift. (D.E. 17, ¶¶ 48-52, 64)  In North Carolina, civil conspiracy is not an independent cause of action. *Toomer v. Garrett*, 155 N.C. App. 462, 483, 574 S.E.2d 76, 93 (2002).  Liability for civil conspiracy must be alleged in conjunction with an underlying claim for unlawful conduct. *Id.*

Here, Revibe's claim for civil conspiracy cannot stand for two reasons. First, to the extent the underlying claim for unlawful conduct is either the fraud or negligent misrepresentation claims, the civil conspiracy claim falls with them. Second, to the extent the civil conspiracy is premised on some other conduct, Revibe has not pled an underlying claim to go with the conspiracy. For example, Revibe may try to point to its statement that "MedShift and BTL agreed and conspired against Revibe pursuant to a common scheme to generate revenue from the lease of Equipment to Revibe" as the underlying claim for unlawful conduct. (D.E. 17, ¶ 52.) But a scheme to generate money from leasing equipment is not unlawful conduct or an underlying claim.

Recently, the North Carolina Business Court dealt with a similar situation in *McCarron v. Howell*, 2024 NCBC LEXIS 144. There, the court was faced with a civil conspiracy claim based on an underlying fraud.  In analyzing the civil conspiracy claim the court noted that the civil conspiracy to commit fraud and the fraud claim collapse into one. *Id.* at *61. The court dismissed the civil conspiracy claim because the underlying fraud claim was dismissed as insufficiently pled. *Id.* at *64. This Court should do the same. Dismissing the underlying fraud and negligent

claims as insufficiently pled or for failure to state a claim mandates dismissal of the civil conspiracy claim.

## CONCLUSION

For the reasons stated herein, BTL respectfully requests that the complaint be dismissed for lack of personal jurisdiction.

This the 20th day of December, 2024.

**TEAGUE CAMPBELL DENNIS & GORHAM, LLP**

BY: /s/ Jacob H. Wellman
Jacob H. Wellman – N.C. State Bar No. 28853
P.O. Box 19207
Raleigh, NC 27619-9207
Telephone: (919) 873-0166
Facsimile: (919) 873-1814
Emails: jwellman@teaguecampbell.com
*Attorney for Third-Party Defendant BTL Industries, Inc.*

## CERTIFICATE REGARDING THE USE OF ARTIFICIAL INTELLIGENCE

I hereby certify, in accordance with the Court's Standing Order In Re: Use of Artificial Intelligence (Docket No. 3:24-mc-104), that no artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in Lexis; and that every statement and every citation to an authority contained in this document has been checked by an attorney in this case as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 19th day of December, 2024.

**TEAGUE CAMPBELL DENNIS & GORHAM, LLP**

BY:   /s/ Jacob H. Wellman
        Jacob H. Wellman – N.C. State Bar No. 28853

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

This the 19th day of December, 2024.

**TEAGUE CAMPBELL DENNIS & GORHAM, LLP**

BY: /s/ Jacob H. Wellman
Jacob H. Wellman – N.C. State Bar No. 28853